# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BIOCONVERGENCE LLC d/b/a SINGOTA SOLUTIONS**, <br><br> Plaintiff, <br><br> v. <br><br> **SIMRANJIT JOHNY SINGH**, <br><br> Defendant. | Case No. 21-cv-2090 (CRC) |

## MEMORANDUM OPINION

Plaintiff Bioconvergence LLC d/b/a Singota Solutions ("Singota") is a life sciences company based in Indiana.  For the past three and a half years, Singota has been embroiled in litigation with one of its former employees, Jaspreet Attariwala.  Singota claims that Attariwala stole client contacts and other trade secrets in anticipation of taking a job with one of its competitors, violating her employment contract and various trade secrets laws.  Singota has now filed suit in this Court against Attariwala's husband, defendant Simranjit Singh, who resides in the District of Columbia.[1]  It alleges that Singh participated in Attariwala's efforts to steal confidential trade secrets and helped conceal this wrongdoing.  Proceeding *pro se*, Singh moves to dismiss the complaint.  For the reasons below, the Court will deny the motion.

## I.   Background

The Court draws the following facts from the allegations in Singota's complaint, which it must accept as true for the purposes of the motion to dismiss.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

---

[1] The complaint refers to the defendant as "Mr. Attariwala."  The Court will use the name the defendant chooses in his own briefing—Mr. Singh.

A.  <u>Attariwala's Employment with Singota</u>

Singota is an Indiana-based life sciences company.  Compl. ¶¶ 12–13.  It provides services to clients in the pharmaceutical, biotechnology, animal health, and medical device industries, helping them meet FDA standards for sterile products administered by injection.  <u>Id.</u> ¶ 13.  From September 2015 to December 2018, Attariwala worked as a business development manager for Singota.  <u>Id.</u> ¶¶ 27, 115.  In that capacity, she had access to confidential information about Singota's business, including current and prospective client lists and proprietary information about the company's products and pricing.  <u>Id.</u> ¶¶ 37–38.  Attariwala's employment contract and the company's handbook required her to keep this information confidential both during and after her employment, and her contract included a non-compete clause lasting for twelve months after her departure.  <u>Id.</u> ¶¶ 31–35.

In October 2018, while still employed with Singota, Attariwala began interviewing for a job with Emergent, a Maryland-based biopharmaceutical company that Singota considers a competitor.  <u>Id.</u> ¶¶ 5, 56–57, 63–68.  Singota alleges that, both before and after she secured that new position, Attariwala stole lists of clients and information about their business needs that Singota had developed, as well as proprietary information about Singota's business development and client solicitation strategies.  <u>Id.</u> ¶¶ 82–144.  Singota claims that at least some of the information was taken with Mr. Singh's cooperation and help—with crucial information forwarded to his personal email, downloaded to his computer, or uploaded to his cloud account.  <u>Id.</u> ¶¶ 50–54.

B.  <u>Singota's Suit Against Attariwala</u>

In January 2019, Singota sent Attariwala a cease and desist letter, demanding that she comply with the non-compete in her employment agreement and stop using any confidential

information she had accessed in violation of that agreement. <u>Id.</u> ¶ 146.  Singota also demanded that Emergent, Attariwala's new employer, ensure that she complied with the agreement. <u>Id.</u> ¶ 149.  Singota alleges that, despite assurances from both Attariwala and Emergent, Attariwala soon used Singota's proprietary client information in her new role. <u>Id.</u> ¶¶ 147, 152–60.

In late February 2019, Singota sued Attariwala in an Indiana state court. <u>Id.</u> ¶ 167.  That court entered a temporary restraining order and then a preliminary injunction against Attariwala. <u>Id.</u> ¶¶ 171, 184.  Those orders, among other things, precluded Attariwala from using Singota's data and required her to preserve, identify, and return any confidential information in her possession. <u>Id.</u> ¶¶ 171–72, 184.  The court appointed a forensic expert, at Attariwala's expense, to help identify confidential information still in Attariwala's possession. <u>Id.</u> ¶¶ 184–86.  Singota alleges that Attariwala delayed providing or concealed devices and accounts with relevant information from the court-appointed expert—including ones belonging to Mr. Singh. <u>Id.</u> ¶¶ 192, 204.  For her refusal to cooperate with the investigation and failure to pay the expert as ordered, the Indiana state court orally held Attariwala in contempt in April 2019. <u>Id.</u> ¶¶ 207–20.

Soon thereafter, Singota moved to amend its complaint to add Singh as a defendant. <u>See</u> Mot. Leave to Amend at 1–2, <u>Bioconvergence LLC v. Attariwala</u>, No. 53C01-1902-PL-480 (Monroe Cir. Ct. Apr. 17, 2019).  On April 30, 2019, Singota asked to withdraw its amendment request, without prejudice to refiling should it want to pursue claims against Singh later. <u>See</u> Mot. Withdraw Mot. Leave to Amend at 1, <u>Bioconvergence LLC v. Attariwala</u>, No. 53C01-1902-PL-480 (Monroe Cir. Ct. Apr. 30, 2019).  The Monroe Circuit Court granted the withdrawal motion. <u>See</u> Order, <u>Bioconvergence LLC v. Attariwala</u>, No. 53C01-1902-PL-480 (Monroe Cir. Ct. May 9, 2019).  Around that same time, Attariwala removed the case against her to federal court. Compl. ¶ 221.

3

Singota's case against Attariwala remains ongoing.  In December 2019, Southern District of Indiana Judge Sarah Evans Barker granted Singota's request for further preliminary injunctive relief against Attariwala, finding that she had led it "on a months-long wild goose chase in search of its stolen trade secrets."  Id. ¶ 290–91.  Although proceedings in that case were stayed for several months after Attariwala filed for bankruptcy, id. ¶¶ 293–95, discovery in Singota's case against Attariwala now continues, see Order Granting Pl.'s Unopposed Mot. Amend Case Mgmt. Plan, Bioconvergence LLC v. Attariwala, No. 19-cv-1745 (S.D. Ind. May 27, 2022), ECF No. 382.  The parties are set to file dispositive motions in September 2022 and be ready for trial by July 2023.  Id.

### C.   Singota's Litigation Against Singh in the Southern District of Indiana

In June 2019, Singota amended its complaint in the Southern District of Indiana case against Attariwala, again seeking to add Mr. Singh as a defendant.  Compl. ¶ 303.  The amended complaint alleged that Singh had received Singota's confidential information and conspired with Attariwala to misappropriate trade secrets and help her violate her employment agreement.  See First Am. Compl. ¶¶ 142–62, Bioconvergence LLC v. Attariwala, No. 19-cv-1745 (S.D. Ind. June 18, 2019), ECF No. 30.

In March 2020, the Southern District of Indiana granted Singh's motion to dismiss for lack of personal jurisdiction.  See Order Granting Defendant's Mot. Dismiss ("SDIN Jurisdictional Order"), Bioconvergence LLC v. Attariwala, No. 19-cv-1745 (S.D. Ind. Mar. 23, 2020), ECF No. 175.  It held that Singota had not established that Singh, a District of Columbia resident, had purposefully directed any of his allegedly tortious conduct at Indiana, sufficient for that court to exercise personal jurisdiction over him.  Id. at 20.  The court emphasized, however, that its power "to enforce the terms of [its] Preliminary Injunction against Mr. Singh to the

4

fullest extent necessary, if he is determined to be [i]n active concert and participation with his wife in any current or future attempt to evade compliance." Id. (internal quotation marks omitted).

       D. Proceedings in this District

       Singota now seeks relief against Singh in two proceedings in this district.  First, in October 2020, Singota filed an action against Singh related to his apparent efforts to evade service of a deposition notice in the Indiana proceedings.  See Mot. Leave to Serve Subpoena by Alternative Means at 2–5, Bioconvergence LLC v. Attariwala, No. 20-mc-101 (D.D.C. Oct. 14, 2021), ECF No. 1.  Those discovery-related proceedings remain pending before Judge Contreras.

       Second, in August 2021, Singota filed this civil action against Mr. Singh.  See Compl. ¶ 3.  The complaint largely contains the same allegations previously raised in the Southern District of Indiana case.  It contains seven counts.  Compl. ¶¶ 402–52.  They include violations of the Indiana, Maryland, and D.C. Uniform Trade Secrets Acts; violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1832; conversion; receipt of stolen property; and civil conspiracy. Singota also seeks recovery under the Indiana Crime Victims Relief Act and injunctive relief.

       Singh, proceeding _pro se_, has moved to dismiss the complaint in its entirety.  See Mot. Dismiss, ECF No 9.  The motion largely focuses on the Southern District of Indiana's dismissal decision.  Singh suggests that Judge Barker's opinion evaluated the claims against him on the merits and found them speculative.  He raises several other discrete challenges to the complaint, including lack of subject matter jurisdiction, improper venue, laches, and failure to join necessary parties.  Singota opposes the motion, which is now ready for this Court's review.[2]

---

[2] Singota has also filed several other related actions, which are largely not relevant to the resolution of this motion.  These include cases against Emergent in the Southern District of Indiana and District of Maryland, as well as cases against Ms. Attariwala's business—Honey

## II.   Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court "must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow, 216 F.3d at 1111 (cleaned up); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The court need not, however, accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). "[T]he plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over its claim by a preponderance of the evidence." Marine Wholesale & Warehouse Co. v. United States, 315 F. Supp. 3d 498, 508 (D.D.C. 2018) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). In resolving a motion to dismiss for lack of jurisdiction, the court may, where necessary, consider "undisputed facts evidenced in the record" or its own "resolution of disputed facts" to assure itself that it has jurisdiction. Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

A motion to dismiss under Rule 12(b)(6) requires the court to determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual

---

Ji—in the Southern District of Indiana and this district. See Bioconvergence LLC v. Emergent Biosolutions, Inc., No. 21-cv-2163 (S.D. Ind.); Bioconvergence LLC v. Emergent Biosolutions, Inc., No. 21-cv-1959 (D. Md.); Bioconvergence LLC v. Honey Ji's, Corp., No. 21-cv-2174 (S.D. Ind.); Bioconvergence LLC v. Honey Ji's, Corp., No. 21-cv-2091 (D.D.C.).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Analysis

In his motion to dismiss, Singh raises a variety of objections to Singota's complaint—focusing on the adequacy of federal jurisdiction, the appropriateness of the venue chosen, and the need to try this case together with other, related claims against those allegedly involved in the dispute between Singota and Attariwala.[3]   A common thread ties many of his challenges together:  In Singh's view, this case is an improper, belated vehicle to retry the claims dismissed by the Southern District of Indiana.  The Court disagrees.  Singh's argument rests on a faulty understanding of the history of the litigation against him.  Judge Barker's dismissal order did not purport to comment on the merits of the underlying claims.  Indeed, because that court dismissed for lack of personal jurisdiction, it could not weigh in on such matters.  For that reason, and for the additional reasons laid out below, the Court will deny Singh's motion to dismiss.

#### A.  Res Judicata and Collateral Estoppel

Because it suffuses so much of the motion to dismiss, the Court will begin with Singh's insistence that Singota is improperly attempting to relitigate issues decided in the Southern District of Indiana.  See Mot. Dismiss at 20–22 (contending that Judge Barker had already found

---

[3] Singh asks the Court to treat his pleadings with the leniency traditionally afforded to *pro se* litigants.  See Mot. Dismiss at 1–2; Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993).  Singota opposes this request on the ground that Singh is a trained and barred attorney, even if he does not litigate regularly.  See Opp'n at 3–4.  The D.C. Circuit has not yet decided whether attorneys proceeding *pro se* are entitled to any leniency, see Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014), although many courts in this district have not automatically applied liberal pleading standards in these cases, see, e.g., Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007).  The Court need not wade into this dispute, as Singh has not provided grounds to dismiss any of the claims in the complaint, even reading his pleadings liberally.

allegations too speculative to state a claim); id. at 29 (raising collateral estoppel in support of
jurisdictional argument); id. at 38–39 (offering distinct res judicata argument).  Singota objects
to any application of Judge Barker's order because it was not a final judgment on the merits of
any claim.  See Opp'n at 5–12.  Singota has the better of this argument.

Res judicata, or claim preclusion, "bars successive lawsuits if a prior litigation (1)
involving the same claims or causes of action, (2) between the same parties or their privies, (3)
ended in a final, valid judgment on the merits, (4) entered by a court of competent jurisdiction."
Ashbourne v. Hansberry, 894 F.3d 298, 302 (D.C. Cir. 2018).  Collateral estoppel, or issue
preclusion, prevents relitigation of an issue if (1) "the same issue now being raised" was
"contested by the parties and submitted for judicial determination in the prior case"; (2) the issue
was "actually and necessarily determined by a court of competent jurisdiction in the prior case";
and (3) preclusion would "not work a basic unfairness to the party bound by the first
determination."  Yamaha Corp. of Amer. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).
Both doctrines, then, require a final determination of the issue or claim by a court with authority
to make one.

The Southern District of Indiana's order dismissing Singh for lack of personal
jurisdiction does not satisfy either preclusion doctrine.  A dismissal for lack of personal
jurisdiction is not a decision on the merits for the purposes of res judicata.  See Fed. R. Civ. P.
41(b) (providing that a dismissal "for lack of jurisdiction" does not "operate[] as an adjudication
on the merits"); 18A Edward H. Cooper, Federal Practice & Procedure Jurisdiction § 4436 (3d
ed. Apr. 2022 update) (explaining, per Rule 41(b), the lack of "res judicata effect[] of a judgment
that dismisses an action for lack of subject-matter or personal jurisdiction"); Shipkovitz v.
Mosbacher, No. 90-cv-2159, 1991 WL 251864, at *6 (D.D.C. Nov. 12, 1991).  And Judge

Barker's finding that the court did not have personal jurisdiction over Singh was, by definition, not a determination of any merits issue by a court of competent jurisdiction. The Southern District of Indiana's dismissal therefore could not trigger either res judicata or collateral estoppel.

Nor, the Court notes, did Judge Barker even advance a position on the merits of any allegation or claim. Throughout his motion to dismiss, Singh cherry picks comments in that order that seemingly speak to the strength of the allegations against him. For example, he points to the Indiana court's conclusion that certain allegations "relie[d] on speculation as to what Mr. Singh could or might have done." Mot. Dismiss at 20 (quoting SDIN Jurisdictional Order at 18). Though Singh concedes that he only moved to dismiss "on the grounds of personal jurisdiction," he insists that the opinion "look[ed] at Plaintiff's allegations beyond the confines" of the personal jurisdiction analysis and "made a number of notable findings" on the merits. Id. at 39. Singh misreads Judge Barker's opinion. That analysis did not offer commentary on the strength of the allegations overall, nor on whether, if true, they would sufficiently establish liability on any of the claims. Rather, the court there only held that certain individual factual allegations were too speculative or attenuated to establish "a purposeful attempt by [Singh] to cause the alleged harms *in Indiana*"—as required for personal jurisdiction. SDIN Jurisdictional Order at 16 (emphasis added). Thus, independent of its lack of preclusive effect, Judge Barker's reasoning is not even particularly relevant to the analysis here.

B.  Jurisdictional Challenge

The Court now turns to Singh's bid for dismissal under Federal Rule of Civil Procedure 12(b)(1). Singh asserts that this Court lacks jurisdiction over this case because (1) the sole federal question presented is "frivolous and made solely for the purposes of obtaining

jurisdiction"; and (2) the Court should not exercise supplemental jurisdiction over the remaining state-law claims.  The Court is not convinced.

Singota alleges that this Court has federal question jurisdiction under 28 U.S.C. § 1331 based on Count II of the complaint, which alleges a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832.  Singh suggests that this federal claim is frivolous for two reasons, but each fails.  First, Singh focuses on the timing of Singota's pleading of the Defend Trade Secrets Act claim.  See Mot. Dismiss at 30.  He notes that Singota did not include this federal claim when it originally tried to add Singh to the complaint in Indiana state court, and only added the claim once it moved to bring Singh into the federal case.  But Singota was within its rights to bring—or not bring—a federal claim as it saw fit, and a change of litigation strategy over the course of a case does not suggest any improper gamesmanship.  Second, Singh claims that the Southern District of Indiana "has already reviewed" this federal claim and found it "barebones and highly speculative."  Id. at 30–31.  The Court has already explained, however, that the Southern District of Indiana's dismissal order did not and could not evaluate the merits of any claim in the complaint.  Beyond this, Singh does not otherwise offer any reason to dismiss the Defend Trade Secrets Act claim, and the Court sees none either.  The Court therefore finds that it has jurisdiction over this claim under 28 U.S.C. § 1331.

For that reason, the Court will not decline exercise of supplemental jurisdiction over the other state law claims in the complaint.  The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Singh's alleged violations of

various federal and state trade secrets laws, as well as the common law tort claims against him, all arise from "a common nucleus of operative fact"—Singh's alleged efforts to help his wife steal and conceal trade secrets.  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  They therefore satisfy the requirements of § 1367(a).  Nor does the Court see any reason to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).  Singh's only argument otherwise rests on an assumption that the Court would agree to dismiss the federal claim.  The Court has already rejected that invitation, so it sees no reason to decline supplemental jurisdiction.[4]

C.  Venue

Singh also moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(4) for improper jurisdiction.  Singh contends that venue is improper because none of the relevant events took place in the District of Columbia.  See Mot. Dismiss at 37–38.  However, venue is proper in, among other places, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Singh, the sole defendant, resides in D.C., Compl. ¶ 11, so this Court is an appropriate venue.

D.  Sufficiency of Allegations

The Court now turns to the bulk of Singh's motion, which seeks dismissal for failure to state a claim.  Much of Singh's argument on this front is quite general, and it relies on the incorrect premise that the Southern District of Indiana's dismissal order is entitled to preclusive

---

[4] At points in his jurisdictional argument, Singh suggests that the complaint improperly brings related claims under the trade secrets laws of Indiana (where Singota is located); D.C. (where Singh resides and allegedly acted); and Maryland (where Emergent, the alleged competitor, would benefit from these acts).  See Mot. Dismiss at 31; Reply at 18.  These arguments do not strike the Court as going to subject matter jurisdiction, but instead to whether Singota has alleged facts sufficient to meet the elements of each substantive cause of action under various state laws.  Because the parties do not discuss this potential argument further, the Court will not evaluate it now.

effect.  See, e.g., Mot. Dismiss at 20 (arguing that Singota "has merely re-alleged substantially similar facts and causes of action which were not found to be availing by the Southern District Court of Indiana"); Reply at 11 (calling Judge Barker's analysis "intertwined with the merits"). The Court has already determined that this dismissal for lack of personal jurisdiction does not trigger any preclusion doctrine or offer much guidance on the overall sufficiency of the factual allegations.  The Court need not address this contention further.

In his motion, Singh does offer a few specific arguments why, in his view, certain elements of the various claims against him are not sufficiently pled.  The Court finds each lacking.

First, Singh faults Singota for not stating its "damages . . . with any particularity," despite, apparently, some requests for clarification that do not appear in the record in this case. Mot. Dismiss at 21.  This argument focuses particularly on Singota's claim for relief under the Indiana Crime Victims' Relief Act ("ICVRA"), which allows victims of certain crimes to recover treble damages for any "pecuniary loss" suffered as a result of the offense.  See Ind. Code § 34-24-3-1.  The federal rules, of course, only require particularity in pleading in certain limited circumstances.  See Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim"); Fed. R. Civ. P. 9 (outlining circumstances where allegations must be specifically pled).  The ICVRA likewise does not impose any heightened pleading standard on claimants, with respect to damages allegations or otherwise.  Rather, all Singota "needs to allege is that it has suffered a 'pecuniary loss,'" LeSEA, Inc. v. LeSEA Broad. Corp., 379 F. Supp. 3d 732, 742 (N.D. Ind. 2019), which "has been described as a 'loss of money, or of something by which money, or something of money value may be acquired,'" Opportunity Knocks, Inc. v. Maxwell, 618 F. Supp. 2d 920, 927 (N.D. Ind. 2009).

Singota has done so.  Its ICVRA claim centers on Singh's alleged conversion of Singota's confidential business information and receipt of stolen property in the same form.  See Compl. ¶ 438.  Singota has elsewhere alleged that these trade secrets are "highly valuable," and "derive[] independent economic value from not being known to, and not being readily ascertainable by proper means by, other persons"—including competitors.  Id. ¶¶ 329, 339.  Finally, Singota claims that the conversion and retention of this confidential information caused economic damage in the form of, among other things, lost profits.  Id. ¶¶ 431, 436.  That is sufficient to meet the damages element of an ICVRA claim at the pleadings stage.

Next, Singh claims that Singota has not offered sufficient allegations to satisfy the intent element of various causes of action.  See Mot. Dismiss at 22–23.  As Singh notes, several of the claims in the complaint require a knowing, intentional, or willful act.  See, e.g., Ind. Code § 24-2-3-2 (defining misappropriation as, among other things, "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"); 18 U.S.C. § 1832(a) (requiring, for violation of Defend Trade Secrets Act, that individual have acted "with intent to convert a trade secret . . . and intending or knowing that the offence will[] injure any owner of that trade secret").  Much of Singh's argument on this point rests on the misguided assumption that the Southern District of Indiana's opinion weighed in on the sufficiency of all the allegations on the merits.  Again, Judge Barker only held that the allegations did not amount to a "purposeful attempt to cause harm in Indiana"—not whether the alleged conduct was intentional at all.  SDIN Jurisdictional Order at 16.  Besides, the Court finds that Singota *has* adequately alleged that Singh acted with the requisite intent for various causes of action.  Downloading Singota's confidential information onto his MacBook, copying Singota documents onto a personal device, and refusing to produce certain devices and accounts that

allegedly contain confidential trade secrets would all potentially qualify as willful or intentional acts. Compl. ¶¶ 51, 169, 209, 324–28. Notably, Singota has also alleged that Singh "was and is aware of the confidential and proprietary nature of Singota's confidential information," yet helped take and continues to conceal it anyway. Id. ¶ 420–21. Given this, Singota has adequately alleged the requisite intent element for any of the claims in its complaint.

A similar problem dooms Singh's argument that the complaint does not adequately state a claim for conspiracy. See Mot. Dismiss at 23. Under Indiana law,[5] "[a] civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." Miller v. Cent. Ind. Cmty. Found., Inc., 11 N.E.3d 944, 962 (Ind. Ct. App. 2014). While civil conspiracy is not a "separate civil cause of action, . . . there is a civil cause of action for damages resulting from a conspiracy." Id. (internal citation omitted). Because the "gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement, . . . allegations of civil conspiracy are just another way of asserting a concerted action in the commission of a tort." Id. (internal citation and quotation marks omitted).

Here, Singota alleges that Singh, his wife, and others (including, presumably, Emergent) "reached an agreement to accomplish" the torts outlined elsewhere in the complaint, including conversion, theft, and breach of Attariwala's various agreements with and duties to her former employer. Compl. ¶¶ 442–43. Despite Singh's argument to the contrary, the Court finds that several allegations in the complaint speak to the existence of an agreement between Singh and Attariwala. For example, Singota alleges that the two jointly "refus[ed] to cooperate" with the

_____

[5] In the absence of any indication in the complaint about what law applies, the Court assumes that the plaintiff brings a claim for civil conspiracy under Indiana law.

computer forensic expert's effort to recover the allegedly misappropriated trade secrets.  Id.
¶ 209.  The complaint also alleges that one of Singota's confidential documents—a questionnaire
containing client information—was emailed to Singh's personal email accounts and then
downloaded by one of his user accounts on the device.  Id. ¶ 51.  At a minimum, these
allegations suggest that Singh and Attariwala had an agreement that would allow her to access
Singota's confidential information using the defendant's devices and accounts.  The Court
therefore will not dismiss the conspiracy claim.

　　　　Finally, the Court notes that, at several places in his motion to dismiss briefing, Singh
asserts that the allegations in the complaint are inaccurate or tell an incomplete story.  For
instance, Singh asks the Court to discount any allegations about his downloading and possession
of the questionnaire discussed above.  See Mot. Dismiss at 7.  He says he deleted the email in
which it was originally sent years ago, and that the computer onto which it was downloaded is
now in possession of the court-appointed computer expert.  Id.  Singh likewise claims that his
deposition testimony in related proceedings "mak[e] it clear that [he] did not act in active concert
or participation with" his wife.  Reply at 7.  These arguments all seek to contradict allegations in
the complaint or add new facts into the record.  The Court therefore may not consider them at the
motion to dismiss stage.  See Sparrow, 216 F.3d at 1111 (court must accept complaint's factual
allegations as true on motion to dismiss);  Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C.
Cir. 1994) (court may not consider facts that "contradict those alleged in the complaint").

　　　　For all these reasons, Singh has not provided any reason to dismiss the claims in the
complaint for failure to state a claim.

E.   Challenge to Claim for Injunctive Relief

Singh also requests dismissal of the complaint's prayer for injunctive relief.  See Mot.
Dismiss at 24–28.   The Court is not convinced by either argument Singh raises in support.

Singh's first argument relies on an order in the Southern District of Indiana case denying
Singota's request to reinstate certain injunctive relief against Attariwala.  Singh suggests that
injunctive relief in this case would be improper because Judge Barker already found "[t]he threat
and harm Singota allege[s] it faces . . . no longer remain."  Id. at 24.  Singh again misconstrues
the court's orders.  Judge Barker only found that certain portions of the injunction were no
longer necessary, given various changes in factual circumstances.  In particular, the court noted
that Attariwala had been terminated from her position at Singota's competitor—Emergent—
mitigating the risk that she would provide it "with a competitive advantage" through unlawful
use of Singota's trade secrets.  Order Denying Pl.'s Mot. Recon. at 3–4, Bioconvergence LLC v.
Attariwala, No. 19-cv-1745 (S.D. Ind. Apr. 10, 2020), ECF No. 188.  Judge Barker did not
determine that these new developments rendered all injunctive relief unnecessary.  Nor did she
cast any doubt on the need for relief against a different defendant here.

The remainder of Singh's arguments on this point speak to the standard for obtaining a
preliminary injunction against him.  See Mot. Dismiss at 24–27.  But Singota has not asked for
entry of a preliminary injunction or otherwise had a chance to litigate this case on the merits.  It
is therefore premature to consider the propriety of any requested relief at this stage.

F.   Laches

In addition, Singh claims that laches bars Singota's request for relief.  See Mot. Dismiss
at 28–29.  "The equitable defense of laches is designed to promote diligence and prevent
enforcement of stale claims by those who have slumber[ed] on their rights."  Menominee Indian

16

Tribe of Wis. v. United States, 614 F.3d 519, 531 (D.C. Cir. 2010) (alteration in original) (internal quotation marks omitted).  Laches "applies where there is (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Id. (internal quotation marks omitted).  "Laches is a fact-intensive defense poorly suited to a motion to dismiss."  Kemp v. Eiland, 139 F. Supp. 3d 329, 349–50 (D.D.C. 2015).

As elsewhere, the Court rejects Singh's reliance on an out-of-context quote from an opinion in the case against Attariwala.  Mot. Dismiss at 28.  Here, he points to the Southern District of Indiana's denial of Singota's April 2021 request to add two new defendants— Emergent and Honey Ji, a dessert company Attariwala owns.  See Order Denying Mot. Amend at 20, Bioconvergence LLC v. Attariwala, No. 19-cv-1745 (S.D. Ind. June 9, 2021), ECF No. 282. In that order, however, the court was not applying laches.  It evaluated only whether Singota had shown "good cause" for its belated amendment request, see Fed. R. Civ. P. 16(b)(4), and whether its request should be denied for undue delay under Federal Rule of Civil Procedure 15(a)(2). Because the Southern District of Indiana there applied a different doctrine to a different set of parties, its reasoning cannot control here.

While Singota has raised legitimate concerns about the viability of any laches defense, given its fact-intensive nature, the Court reserves ruling on any other grounds for relief related to Singh's premature laches claim.

G.  Failure to Join Necessary Parties

Singh also seeks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party under Rule 19.  See Mot. Dismiss at 32–37.  The Court denies this request, too.

"Rule 19 prescribes a three-step procedure for determining whether litigation may proceed in the absence of a particular party: (1) whether the absent party is required to be joined; (2) whether [the absent party] can be joined; and (3) if the absent party cannot be joined, whether the action may still proceed in equity and good conscience." Direct Supply, Inc. v. Specialty Hosps. of Am., LLC, 878 F. Supp. 2d 13, 23–24 (D.D.C. 2012) (alteration in original) (internal quotation marks omitted).   Under Rule 19, an absent party must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).   "[T]he burden is on the moving party to show 'the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.'" Citadel Inv. Grp., LLC v. Citadel Cap. Co., 699 F. Supp. 2d 303, 317 (D.D.C. 2010) (quoting Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994)).   "In evaluating the need for the absent person under Rule 12(b)(7), the court must accept as true the allegations in the complaint, and may also consider extrinsic evidence submitted by the parties." 16th & K Hotel, LP v. Commonwealth Land Title Ins. Co., 276 F.R.D. 8, 12 (D.D.C. 2011).   "[C]ourts are generally reluctant to grant Rule 12(b)(7) motions; 'dismissal is warranted only when the defect is serious and cannot be cured.'" Direct Supply, Inc., 878 F. Supp. 2d 13, 23 (D.D.C. 2012) (quoting 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 1359 (3d ed. 2004)).

Singh has not established that any other party is necessary under Rule 19.  He contends that the case cannot move forward without the alleged coconspirators discussed in the complaint—Attariwala, Emergent, and Honey Ji.   However, "[c]o-conspirator joint tortfeasors are 'not indispensable parties.'"  Doe v. Roman Cath. Diocese of Greensburg, No. 20-cv-1750, 2022 WL 203455, at *9 (D.D.C. Jan. 24, 2022) (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 329 (1955)).  Singh does not otherwise say how Attariwala, Emergent, and Honey Ji are necessary to this case, other than a boilerplate invocation of the risk of "inconsistent rulings" and "obligations."  Mot. Dismiss at 33–34.  It is true that Singota has filed suits against Emergent, Honey Ji, and Attariwala elsewhere.[6]  This pursuit of *other* relief against *other* tortfeasors, however, does not suggest that there is significant risk of inconsistent obligations running against Mr. Singh or any of the defendants in those cases.  And, to the extent it matters, Singh is wrong to suggest that these parallel proceedings are the result of "forum shopping" or Singota's attempt to "disturb the orders" in the proceedings before Judge Barker.  See Mot. Dismiss at 32, 34.  Rather, Singota tried to bring together all these defendants in one case in the Southern District of Indiana, but was unable to do so.  The Court therefore finds that Singh has not met its burden to warrant dismissal under Rule 12(b)(7).

---

[6] Although Singota has filed parallel suits against Honey Ji and Emergent in two different districts, its proceedings in federal court in Maryland and this district were only filed "to preserve its claims against potential statute of limitations defenses," in the event the Southern District of Indiana finds it does not have personal jurisdiction over these defendants, either.  See Mot. Stay at 2, Bioconvergence LLC v. Emergent Biosolutions, Inc., No. 21-cv-1959 (D. Md. Aug. 31, 2021), ECF No. 5; Renewed Mot. Stay at 2, Bioconvergence LLC v. Honey Ji's Corp., No. 21-cv-2091 (D.D.C. Dec. 17, 2021), ECF No. 14.  Singota has sought stays in both cases.  See Order Granting Mot. Stay, Bioconvergence LLC v. Emergent Biosolutions, Inc., No. 21-cv-1959 (D. Md. Sept. 17, 2021), ECF No. 13; Renewed Mot. Stay, Bioconvergence LLC v. Honey Ji's Corp., No. 21-cv-2091 (D.D.C. Dec. 17, 2021).

H.  <u>Arguments in Reply Brief</u>

Finally, Singh raises several discrete arguments only in his reply brief.  These include, among others, whether the complaint adequately alleges misappropriation of a qualifying "trade secret," and whether certain factual allegations fall outside the statute of limitations.  <u>See</u> Reply at 12–13, 15.  The Court will not take up any of these arguments, as they were only presented in the defendant's reply brief.  <u>Slack v. Wash. Metro. Area Transit Auth.</u>, 353 F. Supp. 3d 1, 8 n.4 (D.D.C. 2019); <u>Forman v. Korean Air Lines Co.</u>, 84 F.3d 446, 448 (D.C. Cir. 1996).

**IV.  Conclusion**

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss.  A separate Order shall accompany this memorandum opinion.

 

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>August 22, 2022</u>